IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARIAN PARISE,

        Plaintiff,

vs.                             Case No.05-1352-JTM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM AND ORDER**

      Plaintiff Marian Parise has applied for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401 *et seq*., and for supplemental security income (SSI) benefits, based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Her application was denied initially and on reconsideration. The application was denied by the ALJ on July 27, 2005, a decision affirmed by the Appeals Council on September 23. There are two allegations of error. First, that the ALJ erred in his determination of Parise's residual functional capacity (RFC) by failing to include all of her limitations. Second, the ALJ erred in his assessment of her credibility.

      At time of the hearing, Parise was 48 years old. She had a high school education, and her past relevant work included the jobs of nursing home cook, care-giver, bus driver, and production worker. She contends that she became disabled on June 4, 2004, due to a variety of conditions including spina bifida occulta, degenerative disk disease, degenerative arthritis in her knees, and pain.

The facts are set forth separately in the plaintiff's brief, (Dkt. No. 9, at 2-6), mentioned throughout the argument section of the Commissioner's brief, (Dkt. No. 12, at 3-10), and set forth separately and in detail in the ALJ's opinion. (R. 458-61).

The ALJ found that Parise has conditions which were severe within the meaning of Social Security Regulations, but that singly or together did not rise to the level of an impairment listed in Appendix 1, Subpart P, Regulation No. 4. Specifically, Parise has been found to have mild degenerative changes in the lumbar spine with a history of a lumbar strain, spina bifida occulta, obesity, hypertension, and non-insulin dependent diabetes. She also has a history of thrombosis in her left leg which has resolved itself. The ALJ also noted that although, at the hearing, Parise also cited depression as a source of disability, she acknowledged that this was situational in nature, and has never sought treatment for it. The ALJ determined that the depression was not a severe impairment.

Parise lives with her husband in a single family home. Her husband does most of the household chores. She can drive, but does so for only short distances. When her husband is at work, Parise spends her day at her brother's house, sitting with her legs elevated to reduce pain and swelling. She testified before the ALJ that she could not perform any light work, because working would aggravate pain and that she would also need to lie down frequently to elevate her legs. She testified she has pain in her upper and lower back on a daily basis, that she is never pain free, that her right hip and leg are always swollen, her right leg and foot numb. She testified that her treating physician, Dr. Reevis, told her to stay off her feet and elevate her right leg. But she has not had any recurrence of deep vein thrombosis since January of 2004. Her diabetes is under control, and she has an incident of dizziness from her hypertension only once a month or so. Parise does not take any prescription pain medication; because of her history of thrombosis, she takes over-the-counter aspirin to thin her blood. Parise testified that she has been using a cane for stability for the past two months. Parise is 5'11" and weights 227 pounds.

The ALJ found that Parise's subjective complaints were not fully credible, and were inconsistent with the medical record. (R. 460). Specifically, the ALJ noted that the thrombosis which had hospitalized Parise in 2004 had resolved itself and she currently took no prescription pain medication. He noted her assertion that she had been told by her physician to lie down daily to elevate her legs is not confirmed anywhere in the medical record. Physical examinations have shown only minimal degenerative changes in the lumbar spine. After receiving treatment for a lumbar strain, Parise was released to return to work without any limitations. Parise has complained of chest pain, but EKGs of the plaintiff have been normal. Dr. K. Komes, M.D., examined Parise on September 14, 2004, and found "no significant abnormalities noted that will prohibit sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, or traveling." (R. 338).

The ALJ also noted the opinion of Parise's treating physician, Dr. T. Burden, M.D., that Parise should be limited to frequently lifting only ten pounds, occasionally lifting only twenty pounds, sitting only four hours out of each workday, standing or walking only four hours of a workday for only one hour at time, pushing and pulling only two pounds, occasionally balancing, stooping, kneeling, crouching and reaching, frequently handling, fingering and feeling, and no crawling. But the ALJ noted that Dr. Burden's relationship of Parise was very recent and very limited (R. 382), that according to the vocational expert, a person with the limitations described by Dr. Burden could still perform Parise's old work of electronics production worker, and Burden's recommendation that Parise lie down during the day was inconsistent with the rest of the medical evidence showing few abnormal findings, but rather that Parise had made a good recovery from her acute deep vein thrombosis with no complications or limitations. (R. 461).

The ALJ, after explicitly referencing Parise's obesity, de-conditioning, mild degenerative changes, and spina bifida, found that Parise had an RFC which would limit her to sitting about six hours

3

of an eight-hour day, and walking and standing about six hours a day. She can lift ten pounds frequently, and twenty to twenty-five pounds occasionally. She can only occasionally stoop, kneel, crouch or crawl, and she can only occasionally tolerate prolonged exposure to temperature extremes. She cannot work at unprotected heights or around dangerous machinery. He then found that this RFC would permit Parise to return to her previous work as a production worker in automotive electronics.

As noted earlier, the plaintiff has identified two putative errors in the opinion of the ALJ. First, she argues, the ALJ erred in articulating an RFC which did not fully incorporate her physical limitations. In this context, she contends that the ALJ wrongly discounted the testimony of her treating physician, Dr. Burden. Second, she contends that the ALJ erred in finding that her testimony was less than credible.

The court finds no error with respect to the RFC determination. That assessment by the ALJ was consistent with S.S.R. 96-80 and reflected the ALJ assessment of Parise's own testimony, the objective medical evidence, and the ALJ's own credibility assessment of the plaintiff. The ALJ did not fully incorporate the marked restrictions suggested by Dr. Burden, but cited legitimate grounds for this refusal. First, he noted that Dr. Burden's assessment of the plaintiff was recent, brief, and at odds with the remainder of the objective medical evidence which did not suggest the presence of the limitations suggested by Dr. Burden. The ALJ also noted that even if Dr. Burden's recommendation that Parise frequently lie down during the day was incorporated into the RFC, the vocational expert had testified that Parise could still perform the work he described.

Next, the court finds that the ALJ properly analyzed the plaintiff's subjective claims within the framework of *Luna v. Bowen*, 834 F.3d 161 (10th Cir. 1987). *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985), cited by plaintiff for the proposition that the ALJ must on the record discuss each of the four factors cited in the case, is inapposite. In that case, the ALJ had concluded that a claimant was not

4

disabled in part because he had not undergone recommended surgery. Each of the three cases cited by *Teter* on this issue also involved the impact of other claimants who declined surgical intervention. *Jones v. Heckler*, 702 F.2d 950, 953 (11th Cir.1983); *Cassiday v. Schweiker*, 663 F.2d 745, 749 (7th Cir.1981); *Schena v. Secretary*, 635 F.2d 15, 19 (1st Cir.1980). The Tenth Circuit addressed the issue of a lack of surgery after finding error by the ALJ in summarily rejecting the testimony of two doctors stating that the claimant was completely disabled, and further evidence that

> Teter was hospitalized complaining of back pain three times shortly after his injury in 1981, and that he twice sought treatment for his alcoholism at a detoxification center. The record also reveals his addiction to painkillers as well as alcohol. All of this evidence demonstrates that Teter's pain was genuine.

775 F.2d at 1106. Thus, the portion of the opinion cited by plaintiff did not involve the ALJ's credibility determination; the court had already reviewed and rejected that credibility assessment, concluding that "the only reasonable conclusion to be drawn from this record is that Teter is completed disabled by his pain." Id. at 1107. In the portion of the opinion cited by plaintiff, the court was dealing with an alternate and independent argument offered by the Secretary in support of the ALJ's decision: that even assuming the claimant was completely disabled, recovery is barred under 20 C.F.R. § 404.1530 because the claimant refused surgical intervention.

In the present case, the Commissioner is not seeking to defeat an otherwise valid claim of disability based on the application of § 404.1530. Rather, the question is whether the ALJ erred in his assessment of Parise's credibility. As to such analysis, the Tenth Circuit has stated that an ALJ must focus on objective indicia of credibility, but has also expressly stated that credibility evaluations need not be "a formalistic factor-by-factor recitation of the evidence." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 221) (*quoting Qualls v. Apfel*, 206 F.3d, 1368, 1372 (10th Cir. 200). *See Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995).

Here, while the ALJ may not have addressed every potential factor affecting a claimant's credibility, the factors cited by the ALJ were legitimate and substantial considerations affecting Parise's credibility. The ALJ's determination that Parise's statements of disabling pain were not consistent with the medical records was not erroneous. Her deep vein thrombosis had resolved itself following anticoagulation therapy. There was no indication that the condition would return. Repeated physical examinations showed only minor degenerative disk changes without herniation, and the examiner's consistent release of the plaintiff without any physical limitation or prescription of pain medication. (R. 186, 204, 208 378 460). On September 14, 2004, Dr. Komes found Parise exhibited "no significant abnormalities" which might "prohibit sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, or traveling." (R. 338). The ALJ further appropriately noted the failure of the plaintiff to seek or take prescription pain medication. Reviewing the record as a whole, the court does not find that the ALJ erred in his credibility assessment.

IT IS ACCORDINGLY ORDERED this 24th day of July, 2006, that the plaintiff's appeal of the decision of the Commissioner is hereby denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE